this proviso very distinctly indicates the intent of congress, that the power then existing in courts martial was not to be abrogated or suspended; and it would result that it did not impose on the civil courts the necessity of exercising the jurisdiction as the only means of enforcing the law and securing or punishing offenders.

But supposing all reasonable grounds of doubt are removed, and it is demonstrated that the courts of civil jurisdiction are to take cognizance of this matter, the question yet remains, whether the subject is now brought before me in such posture, and under such a state of facts, as would render it a judicious exercise of discretion to interpose and arrest the parties. Looking at the papers laid before me as the basis of this proceeding, I find a regularly organized court of inquiry, instituted by the secretary of the navy, now sitting and investigating this very matter. The United States law officer of this district is assigned as the judge advocate of that tribunal, and the declaration of Lieutenant Gansevoort, on which his arrest is demanded, was made in the testimony given by him before that court. The report, or written statement of Commander Mackenzie, employed as evidence on this proceeding, was a paper submitted to that court for its examination and action. That court is still diligently engaged in the examination of witnesses upon this very subject matter, and it is most manifest from these papers, that a rightful and full understanding of the charges preferred by these depositions against Mackenzie and Gansevoort, cannot be had by me, without calling the same witnesses before me, and going over the same ground of examination now pursued by the court of inquiry. Nor can a step be taken by the civil authority in this behalf, without at once arresting and suspending the action of the naval court of inquiry. The second section of the act of congress, April 23, 1800, art. 1 [2 Stat. 51], expressly empowers the secretary of the navy to convene such court of inquiry, and prescribes to the members and judge advocate a solemn oath of office. It should therefore be a case of most imperious exigency that would induce any single magistrate to take from such tribunal the subject matter submitted to its investigation, and assume to himself the entire cognizance and disposition of it. There is no fact, submitted to me, indicating any necessity for such procedure. It is not proved that there is the slightest suspicion, that the officers accused will flee a full and searching investigation of their conduct, nor but that they are now under competent control by authority of the president of the United States, to be brought to answer before the proper tribunals, for any violation of the law, committed by them in this most solemn and melancholy transaction. It would be most unusual, if not indiscreet, while the head of the government

is pursuing this investigation in respect to the conduct of the officers of the navy in the exercise of their command, for a single magistrate to intervene, and by his warrant to change the whole course of procedure, and attempt to establish a paramount jurisdiction in himself over a case where at least there is color of authority to support the method pursued by the government. These considerations satisfy my judgment, that the proofs submitted to me do not establish a case, in which a judicial necessity is imposed on me to take cognizance of the complaint, and I therefore decline granting the warrant prayed for, to arrest Alexander Slidell Mackenzie and Guert Gansevoort, for the crime of murder.

[See U. S. v. Mackenzie, Append. Fed. Cas.]

---

## Case No. 15,691.

### UNITED STATES v. MACKENZIE.

[See Append. Fed. Cas.]

---

## Case No. 15,692.

### UNITED STATES v. McKEWAN et al.

[4 Blatchf. 383.] [1]

Circuit Court, S. D. New York. Oct. 14, 1859.

CUSTOMS DUTIES—BOND GIVEN FOR OLD DEBT.

Where, in an action of debt brought by the United States against two defendants, on a bond, it was set up, in defence, that the bond was given for an antecedent debt, consisting of duties due at the custom-house, the payment of which was secured by a bond executed by one of the defendants and another person, that more than twenty years had elapsed, after the giving of the first bond, before the execution of the second, that no demand of payment had been made in the meantime, that the defendants executed the second bond without a knowledge of this defence to the claim, and that they were advised by the agent of the plaintiffs that there was no defence to the demand. Held, that this was no defence to the action.

This was an action of debt, upon a bond executed by the defendants [John McKewan and William Hall] to the plaintiffs, December 14th, 1855, in the penalty of $2,300, conditioned for the payment of $1,137.15, in several instalments.

Charles H. Hunt, Asst. U. S. Dist. Atty.
Archibald G. Rogers, for defendants.

NELSON, Circuit Justice. The defence set up in this case is, that the bond was given for an antecedent debt, consisting of duties due at the custom-house, the payment of which was secured by three several bonds, dated in the year 1832 (the month not given), executed by McKewan, one of the defendants, and one William G. Marshall; that more than twenty years had elapsed, after the giving of the first three

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]